UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| A Better Way to Buy, Inc.,<br><br>    Plaintiff,<br><br>v.<br><br>Ashley Furniture Industries, LLC,<br><br>    Defendant. | Case No. 0:23-cv-3745 (KMM/JFD)<br><br><br>**ORDER** |

Plaintiff A Better Way to Buy, Inc. alleges that Defendant Ashley Furniture Industries, LLC failed to renew its Independent Contractor Agreement for the year 2023 without providing 90 days' notice in violation of the Minnesota Termination of Sales Representative Act, Minn. Stat. § 325E.37, and seeks payment of commissions owed under the Agreement and the Agreement's reinstatement. This matter is before the Court on Defendant's Motion to Dismiss or, in the alternative, to stay the proceedings. ECF No. 5. For the reasons addressed below, the motion is **GRANTED** in part and **DENIED** in part.

I.  BACKGROUND

*The Parties*

Plaintiff A Better Way to Buy, Inc. ("A Better Way") is an Ohio corporation with a principal place of business in Woodbury, Minnesota. Compl. ¶ 1, ECF No. 1-1. A Better Way is an independent sales representative working on behalf of manufacturers to market and solicit orders for their products in return for commission payments on sales made in specifically designated territories. *Id.* ¶ 2. Defendant Ashley Furniture Industries, LLC

("Ashley Furniture") is a Wisconsin limited liability company with a registered office in Roseville, Minnesota. *Id.* ¶ 3. Ashley Furniture is engaged in the production, importation, and distribution of furniture. *Id.* ¶ 4.

### *Independent Contractor Agreement*

By 2022, the parties had already been in business together for over a decade. Between 2020 and 2022, A Better Way increased its sales of Ashley Furniture by approximately $8,000,000. *Id.* ¶ 18.

On or about January 1, 2022, A Better Way and Ashley Furniture entered into the agreement now at issue, an Independent Contractor Agreement (the "Agreement"). A Better Way agreed to solicit wholesale orders for Ashley Furniture products in a specified territory (the "Territory") as its independent sales representative. *Id.* ¶ 7. The contract granted A Better Way the right to represent, offer for sale, promote, and market Ashley Furniture's goods by use of its trade name within the Territory. *Id.* ¶ 8. Pursuant to the terms of the Agreement, A Better Way solicited and procured orders for Ashley Furniture products in the Territory, and the parties had a shared interest in marketing Ashley Furniture's products within the Territory. *Id.* ¶¶ 9–10. In consideration of A Better Way's marketing and promotional efforts for Ashley Furniture, the Agreement provided that A Better Way would be paid commissions on sales of the Products in the territory at specified rates. *Id.* ¶ 13.

The Agreement contains an arbitration clause:

> Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including those based, in

> whole or in part, on an applicable statute, regulation, ordinance, or public policy, and the determination of the scope or applicability of this Agreement to arbitrate, shall be determined by final and binding arbitration before a single arbitrator.

*Id.*, Ex. A, Agreement § 19. Section 19 of the Agreement also states that arbitration shall be administered by JAMS "pursuant to its Comprehensive Arbitration Rules & Procedures (except to the extent inconsistent with the terms of this arbitration agreement)[.]" *Id.* In addition, the parties agreed that the "arbitration provision shall be governed by the Federal Arbitration Act ("FAA") as the Company is engaged in interstate commerce," and that the issue of "arbitrability . . . is governed by the Federal Arbitration Act." *Id.*

Further, the Agreement contains a choice-of-law and forum-selection provision:

> This Agreement shall be construed and governed in accordance with the laws of the state of Florida, without regard to conflict of laws principles. Any legal suit, action or proceeding arising out of or related to this Agreement shall be instituted exclusively in the federal courts of the United States or the courts of the State of Florida in each case located in or near the County of Hillsborough, and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding.

*Id.* § 21. The Agreement was for a term of one year, continuing until December 31, 2022. Compl. ¶ 15. The Agreement set no limits on the commissions A Better Way could earn either during the contract term, or on post-termination sales procured by A Better Way. *Id.* ¶ 16.

### *Termination of the Agreement*

On November 28, 2022, Ashley Furniture's Vice President Craig Nelson and Vice President Chris DeLaguardia informed A Better Way's agent via telephone that A Better

3

Way's contract would not be renewed for the year 2023. *Id.* ¶ 19. A Better Way alleges that Ashley Furniture failed to provide 90 days' notice as required by the Minnesota Termination of Sales Representatives Act ("MTSRA"), Minn. Stat. § 325E.37, subd. 2(a)(1). *Id.* ¶ 20. A Better Way also claims that Ashley Furniture failed to identify a good cause basis, or any cause whatsoever, for declining to renew the Agreement, and that it lacked good cause to terminate. *Id.* ¶ 21. A Better Way asserts that by wrongfully failing to renew the Agreement, Ashley Furniture caused it to expire on December 31, 2022. *Id.* ¶ 22.

   *Procedural History*

   On November 7, 2023, A Better Way commenced a civil lawsuit against Ashley Furniture in the State of Minnesota Tenth Judicial District Court, Washington County, Court File No. 82-CV-23-5039. Notice of Removal ¶ 1, ECF No. 1. In that complaint, A Better Way sought an award for the remainder of its commissions determined to be due and owing as a result of Ashley Furniture's alleged violation of MTSRA, and reinstatement of its contract. Compl. ¶ 30–31. On December 6, 2023, Ashley Furniture removed the case to this Court, asserting that the dispute falls within its diversity jurisdiction under 28 U.S.C. § 1332(a). Notice of Removal ¶¶ 4–9.

**II.   ANALYSIS**

   Ashley Furniture argues that A Better Way agreed to arbitrate all disputes arising out of or relating to the Agreement, that the arbitration is to occur pursuant to JAMS Rules, and that A Better Way's claims regarding MTSRA must be arbitrated instead of litigated before this Court. The Court agrees in large part and stays this matter pending arbitration.

4

### A. Framework for Review

The first question before the Court is whether Ashely Furniture's motion raises a challenge to the Court's subject-matter jurisdiction or presents a request for dismissal that must be viewed through the lens of Fed. R. Civ. P. 12(b)(6). Ashley Furniture insists that its challenge is jurisdictional, but also argues that the same relief of dismissal is required pursuant to Rule 12(b)(6). The Court concludes that Ashley Furniture's challenge does not divest it of jurisdiction. *See, e.g.*, *City of Benkelman v. Baseline Eng'g Corp.*, 867 F.3d 875, 880–81 (8th Cir. 2017) (holding that an arbitration agreement had no relevance to the question of whether a case satisfied constitutional or statutory requirements for jurisdiction); *Seldin v. Seldin*, 879 F.3d 269, 272 (8th Cir. 2018) ("An arbitration agreement alone, without other statutory or binding jurisdictional limitations, does not divest the federal courts of subject matter jurisdiction."). Instead, the Court concludes that the proper framework for its analysis is Rule 12(b)(6). *TDM Enterprises, Inc. v. Ashley Furniture Indus., LLC*, No. 24-cv-328 (JRT/DJF), 2024 WL 3540842, at *1 (D. Minn. July 25, 2024) (disagreeing that an identical challenge goes to the Court's jurisdiction).

### B. Challenge to Arbitration Agreement

When considering a motion to dismiss based on an arbitration provision, courts consider: (1) whether the parties agreed to arbitrate, and if so, (2) whether the dispute is within the scope of that agreement. *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004).

5

### *1. Enforceable Agreement to Arbitrate*

The Court turns first to the question of whether a valid agreement to arbitrate exists between the parties in this case. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 300 (2010) ("Where a party contests [an arbitration clause's enforceability or applicability], 'the court' must resolve the disagreement."). "As the party seeking to compel arbitration, [Ashely Furniture] carries the burden to prove a valid and enforceable agreement." *Burnett v. Nat'l Assoc. of Realtors*, 75 f.4th 975, 981 (8th Cir. 2023) (quoting *Shockley v. Prime Lending*, 929 F.3d 1012, 1017 (8th Cir. 2019)). In assessing whether the parties formed a valid agreement to arbitrate, a court "should apply ordinary state-law principles that govern the formation of contracts." *Ballou v. Asset Mktg. Servs., LLC*, 46 F.4th 844, 851 (8th Cir. 2022) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Federal courts generally apply the forum state's contract law in deciding whether there is a valid arbitration agreement. *Barclay v. Icon Health & Fitness, Inc.*, 550 F. Supp. 3d 710, 717 (D. Minn. 2021).[1]

Under Minnesota law, for a valid and enforceable contract to be formed, there must be a definite and specific offer, acceptance of the offer, and consideration. *Pine River State*

---

[1] Although courts generally apply the forum state's laws to questions of contract formation, if the parties' agreement provides that another state's laws govern, "then the state law chosen by that provision controls unless a persuasive reason is advanced that might justify setting aside that provision." *Barclay*, 550 F. Supp. 3d at 717 (cleaned up) (applying Utah law based on the parties' choice-of-law provision). Here, as noted, the Agreement contains a choice-of-law clause providing that Florida law governs. However, neither party argues the motion before the Court under Florida law, and the parties identify no meaningful difference between Florida and Minnesota law that changes the outcome of this case. Def.'s Mem., ECF No. 7; Pl.'s Opp'n, ECF No. 15. Accordingly, the Court will follow the parties' lead and look to Minnesota law regarding contract formation.

*Bank v. Mettille*, 333 N.W.2d 622, 626–27 (Minn. 1983). In evaluating this issue, courts consider the parties' objective conduct. *Mainville v. College Town Pizza, Inc.*, 629 F. Supp. 3d 913, 921 (D. Minn. 2022) (citing *Cedarstrand v. Lutheran Bhd.*, 117 N.W.2d 213, 221 (Minn. 1962)). "A valid and enforceable contract does not exist when an essential term remains uncertain." *Id.* (citing *Triple B & G, Inc. v. City of Fairmont*, 494 N.W.2d 49, 53 (Minn. Ct. App. 1992)).

Here, Ashley Furniture has shown that the parties entered into a contract that contains a clear arbitration clause. That provision provides, in relevant part:

> Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including those based, in whole or in part, on an applicable statute, regulation, ordinance, or public policy, and the determination of the scope or applicability of this Agreement to arbitrate, shall be determined by final and binding arbitration before a single arbitrator.

Agreement § 19. On the face of the pleadings and the documents properly before the Court, there is no dispute that Ashley Furniture and A Better Way signed the Agreement containing this provision. There is no hint that the arbitration provision was somehow included because of any misrepresentation or mistake. And A Better Way does not argue that the Agreement itself is invalid because there was no offer, acceptance, and consideration.

A Better Way argues that, despite the facial clarity of § 19, the Agreement to arbitrate is invalid. First, A Better Way asserts that a contradiction between the arbitration clause (§ 19) and the forum-selection clause (§ 21) means that there is no valid agreement

7

to arbitrate. Essentially, A Better Way takes the position that there is no such valid agreement because this conflict renders the arbitration clause too indefinite or uncertain. *See Triple B & G, Inc.*, 494 N.W.2d at 53 ("If an alleged contract is so uncertain as to any of its essential terms that it cannot be consummated without new and additional stipulations between the parties, it is not a valid agreement."). The Court disagrees. United States District Judge John R. Tunheim recently compelled arbitration in a strikingly similar case after analyzing identical language in another agreement between Ashley Furniture and one of its sales representatives. Judge Tunheim observed that "arbitration and forum selection clauses are not inherently inconsistent and may be simultaneously enforced." *TDM Enterprises, Inc.*, 2024 WL 3540842, at *3 & n.1 (collecting authorities). For instance, forum selection clauses "can be read in harmony" with arbitration clauses if they cover different topics or different stages of litigation. *See Glen Martin Eng'g, Inc. v. Huawei Techs. Jamaica Co., Ltd.*, No. 09-4083-CV-C-NKL, 2010 WL 318504, at *3 (W.D. Mo. Jan. 20, 2010) (holding that a forum selection clause within a contract indicating any litigation would be handled through the district court was not inconsistent with another clause requiring disputes to go to arbitration). This Court agrees with Judge Tunheim that the two clauses at issue in the Ashley Furniture agreement can be reconciled. *TDM Enterprises, Inc.*, 2024 WL 3540842, at *3.

Next, A Better Way argues that MTSRA invalidates the arbitration clause entirely, and relies upon *Burley Foods, LLC v. Bluegrass*, No. 21-cv-2160 (SRN/LIB), 2022 WL 3044797 (D. Minn. Aug. 2, 2022). Because MTSRA vitiates the clause, there is no agreement to arbitrate at all. Ashley Furniture counters that MTSRA's provisions are

8

preempted by the FAA, so it cannot operate to invalidate the arbitration clause, contrary to the holding in *Burley Foods*. Although the Court leaves the final questions of the application or preemption of MTSRA to the arbitrator as explained below, the Court concludes that Ashley Furniture has the better argument at this stage of the analysis. The Court respectfully declines to follow *Burley Foods* because, simply put, it reverses the order of the preemption analysis. Under *Burley Foods*' reasoning, any time there is a state law limiting arbitration clauses, that law's application would come first to render the clause invalid. As a result, there would never be preemption by the FAA because there would never be a valid arbitration agreement with which to begin the analysis; and this is precisely the reverse of what FAA preemption contemplates. Also, it is clear that FAA preemption of state laws applies broadly in a way that *Burley Foods*' holding would undermine. *See, e.g.*, *Cahill v. Alternative Wines, Inc.*, No. 12–CV–11–LRR, 2013 WL 427396, at *5 (N.D. Iowa Feb. 4, 2013) (holding that the FAA preempted an Iowa law because the statute's restriction on arbitration was not a "generally applicable contract defense" as accepted by the FAA); *Stanley v. Wings Holdings, Inc.*, No. 3-96-1141 (PAM), 1997 WL 826175 (D. Minn. Sept. 23, 1997) (acknowledging that, to the extent the Minnesota Human Rights Act's prohibition on prospective waivers of statutory rights impacts arbitration agreements, that reading is preempted by the FAA).

While the Court declines to resolve the issue of FAA preemption of MTSRA, applying MTSRA to vacate an arbitration clause before even considering preemption, as A Better Way requests, turns the preemption jurisprudence on its head. The Court instead concludes that the parties here have a valid agreement to arbitrate.

9

### 2. *Scope of the Agreement*

The Court next considers whether the dispute here is among the claims the parties agreed to arbitrate and whether they delegated issues of arbitrability to the arbitrator. A Better Way has the burden of showing that its claims fall outside of the parties' arbitration clause, *Mainville*, 629 F. Supp. 3d at 923, and the Court must resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). "When evaluating the intention of parties to delegate threshold arbitrability issues ot the arbitrator, courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Burnett v. Nat'l Ass'n of Realtors*, 75 F.4th 975, 982 (8th Cir. 2023) (quoting *Theroff v. Dollar Tree Stores, Inc.*, 591 S.W.3d 432, 439 (Mo. 2018), *cert. denied sub nom. HomeServices of Am., Inc. v. Burnett*, 144 S. Ct. 1347 (2024).

In this case, the answer is straightforward. Section 19 of the Agreement explicitly and broadly delegates the question of the scope and applicability of the arbitration clause to the arbitrator. This clear delegation is also reinforced by the Agreement's express reference to the JAMS website, which provides in relevant part:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought . . . shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

Decl. T. Rollins, Ex. A at R-11(b), ECF No. 8.

The parties unequivocally manifested their intent to delegate issues of arbitrability to the arbitrator, and the Court must honor that. *See Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 68 (2019) (where the question of arbitrability has been validly delegated to the arbitrator a "court possesses no power to decide the arbitrability issue[,] . . . even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless"); *see also TDM Enterprises, Inc.*, 2024 WL 3540842, at *3–4 (considering this provision in other Ashley Furniture litigation and finding that it delegates questions of arbitrability to the arbitrator).

Here, the application of MTSRA relates directly to the question of arbitrability, and is therefore covered by the delegation language. Because the clear language of the Agreement sends such questions to the arbitrator, the Court will not consider the impact of MTSRA on the Agreement in the first instance. *TDM Enterprises, Inc.*, 2024 WL 3540842, at *4. The Court therefore concludes that A Better Way's remaining arguments—including the application of MTSRA, FAA preemption, and the scope of the arbitration clause—are for the arbitrator to resolve.

### C. To Stay or To Dismiss?

Although Ashley Furniture originally sought either dismissal or a stay, only a stay is available at this juncture. The Supreme Court recently held that the Federal Arbitration Act ("FAA") requires a court to stay, rather than dismiss, a lawsuit involving an arbitrable dispute. *Smith v. Spizzirri*, 601 U.S. 472, 477–79 (2024). The Court reasoned that "staying rather than dismissing a suit [subject to arbitration] comports with the supervisory role that the FAA envisions for the courts," given that the "FAA provides mechanisms for courts

11

with proper jurisdiction to assist parties in arbitration." *Id.*; *see also TDM Enterprises, Inc.*, 2024 WL 3540842 at *4. Against this backdrop, although the Court finds that this case must go to arbitration, the Court denies the Ashley Furnitures motion to the extent it seeks dismissal. Instead, the Court stays this matter while that proceeding continues.[2]

### III.   CONCLUSION

In light of the foregoing, the Court **GRANTS** in part and **DENIES** in part Ashley Furniture's Motion to Dismiss [ECF No. 5]. The motion is denied to the extent it seeks dismissal of this action. The motion is granted to the extent it seeks to stay the matter while the parties arbitrate their dispute. This matter is **STAYED** until the arbitration is completed. A Better Way's renewed Motion to Stay [ECF No. 37] is **DENIED as moot**.

The Parties **SHALL FILE** a joint status report to update the Court on the arbitration proceedings (1) <u>every one hundred and twenty (120) days</u> starting from the date of this Order **and** (2) <u>within seven (7) days</u> of the issuance of the conclusion of arbitration.

**IT IS SO ORDERED.**

Date: September 26, 2024         *s/Katherine Menendez*
                                  Katherine Menendez
                                  United States District Judge

---

[2] The Court notes that Ashley Furniture has already commenced arbitration proceedings in Miami, Florida. ECF No. 36. A Better Way filed a motion to stay Ashley Furniture's demand for arbitration. ECF No. 37. Because the Court compels the parties to arbitrate their dispute, the Court denies A Better Way's motion.